UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

UNITED STATES OF AMERICA

v.

CLARANCE JONES,

    Defendant.

---

CRIMINAL NO. 19 CR 10122 - FDS

## UNITED STATES' SENTENCING MEMORANDUM

The United States recommends a sentence at the low end of the guideline sentencing range of 30-37 months. On May 21, 2019, pursuant to a plea agreement, Clarance Jones pleaded guilty to an Information alleging one count of conspiracy to defraud the Internal Revenue Service in violation of 18 U.S.C. § 371 and four counts of filing false tax returns in violation of 26 U.S.C. § 7206(1) for by failing to report the income he gained from a scheme to cash lottery tickets for others and write-off the income by claiming corresponding gambling losses.

### FACTUAL BACKGROUND

Gambling income, including winnings from state lotteries, is fully taxable and must be reported to the IRS. Lotteries, sweepstakes, race tracks and other gambling operators are required to report to the IRS on a Form W-2G each transaction where the net winnings exceed $600 and are at least 300 times the amount of the wager. The Form W-2G reports to the IRS the winner's name, address and taxpayer identification as well as the amount of the gambling income and any taxes withheld. The winner must declare, under the penalties of perjury, that the name, address and taxpayer identification number listed on the Form W-2G are correct, and that "no other person is entitled to any part" of the payments listed on the form.

1

"Ten-percenting" is a practice by which lottery winners seek to evade these IRS reporting requirements and avoid payment of the applicable taxes by having another individual cash the winning ticket on their behalf, under the other individual's name. In exchange, the individual who cashes the winning ticket and completes the Form W-2G retains a percentage of the winnings, sometimes as high as 10 or 20 percent of the proceeds.

From at least 2013 through May 2017, Jones conspired with convenience and/or liquor store owners Patel, Kinslieh and others to defraud the United States of federal income taxes on Massachusetts state lottery winnings. The object of the conspiracy was to avoid the payment of federal income taxes or improperly claim tax refunds, by purchasing winning lottery tickets from the ticket holders at a discount, cashing them with the Lottery Commission, and offsetting the reported winnings with purported gambling losses.

As part of the scheme, Jones drove around towns in Eastern Massachusetts and picked up the tickets on a weekly basis from the various lottery agents and ticket cashers. He then presented the tickets to an office of the Lottery Commission and signed a Massachusetts State Lottery Commission Claim Form for each ticket. In these forms, Jones falsely declared, under the pains and penalties of perjury, that the winnings were his own. Jones then collected the value of the winning tickets from the Lottery Commission. Jones ultimately reported that lottery income on his tax returns, but offset these claimed gambling winnings with purported gambling losses.

Jones reimbursed the intermediaries for the amounts they had paid the actual ticket holders. Jones and the intermediaries then divided the excess amount—usually between ten and twenty percent of the tickets' value.

For example, on December 11, 2015, Jones cashed a winning $1,000 Massachusetts state lottery ticket that Kinslieh had purchased for cash at a discounted price. In order to cash the winning ticket Kinslieh had purchased, Jones signed a Lottery Commission claim form in which he falsely declared, under the pains and penalties of perjury, that he was the "sole recipient" of the winning lottery payment and that he was "not claiming [the] prize to assist another in the avoidance of financial obligations."

Similarly, on December 16, 2016, Jones cashed multiple winning lottery tickets which Patel and others had purchased from the ticket holders for cash at a discounted price. In order to cash the winning tickets Patel and others had purchased, Jones again signed a Lottery Commission claim form in which he falsely declared, under the pains and penalties of perjury, that he was the "sole recipient" of the lottery payments and that he was "not claiming [the] prize[s] to assist another in the avoidance of financial obligations."

## The False Tax Returns

From at least January 2013 through December 2016, Jones cashed more than about 4,670 winning Massachusetts state lottery tickets—worth between $600 and $10,000 each—that had been acquired for cash at a discount from the actual ticket holders. Jones thereby improperly claimed as his own total lottery winnings of more than about $6,333,000.

| Count | Tax Year | Approx. Date of Filing |
|---|---|---|
| 2 | 2013 | May 12, 2014 |
| 3 | 2014 | January 21, 2016 |
| 4 | 2015 | May 9, 2016 |
| 5 | 2016 | May 29, 2017 |

Notwithstanding those winnings, which Jones reported as his own for tax purposes, Jones annually filed federal income tax returns on which he cumulatively reported taxable income of only approximately $30,000—and paid less than $5,000 in federal income taxes—by improperly offsetting virtually all of those claimed winnings with purported gambling losses.

## II. GUIDELINES CALCULATION

### A. The Parties Positions on the Guidelines

In the plea agreement in this case, the parties agreed as to the calculation under the USSG (prior to any adjustment for acceptance of responsibility) as follows:

a) in accordance with USSG §§ 2T1.4(a)(1), and 2T4.1(G), Defendant's base offense level is 18, because the tax loss is more than $250,000 but not more than $550,000.

In addition, the United States took the following positions, with which Probation agreed in the Presentence Investigation Report, and to which the Defendant does not object:

a) in accordance with USSG § 2T1.1(b)(1), Defendant's offense level is increased by two, because the Defendant failed to report or to correctly identify the source of income exceeding $10,000 in any year from criminal activity; and

b) in accordance with USSG § 3B1.1(c), Defendant's offense level is increased by two, because Defendant was an organizer in the criminal activity.

c) With his early guilty plea, Jones receives three points for acceptance and his final total offense level would be 19 (18 + 2 + 2 − 3) for a guideline range of 30-37 months.

Accordingly, the parties and Probation agree that the Defendant's final offense level is 19 or 30-37 months.

## SENTENCING RECOMMENDATION

Jones was the leader of a long-running scheme to defraud the Massachusetts state lottery and the Internal Revenue Service. Jones for many years was the number one lottery ticket casher

for a number of years in Massachusetts by cashing tickets for others through this fraudulent scheme. He collected old lottery tickets from others in order to support his claim that he had the gambling losses he claimed to offset the gambling winnings he claimed, but did not really have.

There is no unwarranted sentencing disparity between Jones and his co-conspirators here. The government did recommend probation for Patel and Kinslieh, the two charged co-conspirators, both of whom were lottery agents who cashed tickets for Jones. However, these two defendants were not similarly situated to Jones. They had both pleaded guilty prior to charges and were available to be witnesses against Jones had this matter gone to trial. They also both received much smaller amounts of unpaid taxes from the scheme (under $6,000) and thus had guideline sentencing ranges of 0-6 months. Jones, as the orchestrator of the scheme and the beneficiary of millions in income from the scheme is simply not similarly situated and deserves a more serious sentence that these co-conspirators.

The government recognizes the extensive letters of support submitted for Jones based upon his conduct earlier in his life. It also appears as if Jones may still not be acknowledging a gambling addiction since it appears that he gambled away most of his earnings from this scheme. This is a sad chapter in a life which appears to have been different in Jones' younger years. For these reasons, among others, the government recommends a sentence at the low end of the guidelines for this extensive and long-running tax and lottery fraud scheme.

        Respectfully submitted,

        ANDREW E. LELLING
        United States Attorney

By:   /s/ Sara Miron Bloom
        SARA MIRON BLOOM
        Assistant United States Attorney
        (617)748-3265

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

                                          */s/ Sara Miron Bloom*
                                          SARA MIRON BLOOM
                                          Assistant United States Attorney

Date: September 17, 2019